143 N.J. Super. 307 (1976)
362 A.2d 1296
LOUISE MAROS, PLAINTIFF,
v.
TRANSAMERICA INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 6, 1976.
*309 Mr. Thomas E. Napolitano for plaintiff (Messrs. Napolitano & Napolitano, attorneys).
Mr. Walter E. Monaghan for defendant (Messrs. Haggerty & Donahue, attorneys).
*310 ROSENBERG, J.S.C.
This proceeding is a reargument of plaintiff's motion for summary judgment. By way of verified complaint and affidavit the following facts are brought to the court's attention. Defendant Transamerica Insurance Company (Transamerica) issued policy #PE264461 to plaintiff's husband, Julius Maros, on November 17, 1975. The policy, entitled "Paramount Plan Automobile Policy," includes coverage required under N.J.S.A. 39:6A-1 et seq., the New Jersey Automobile Reparation Reform Act.
On December 15, 1975 Maros was involved in an automobile accident in which he sustained serious personal injuries. As a result of these injuries he died four days later. Plaintiff alleges that her husband was not an "income producer" at the time of the accident, but was one who performed "essential services." Mrs. Maros further alleges that she is the person now incurring the expense of providing the essential services previously performed by Julius Maros. Transamerica has paid medical and funeral expense benefits due under the policy. On February 10, 1976 plaintiff applied to defendant for payment of $4,380 believed to be due under the insurance policy as "survivor essential services benefits." Transamerica has refused to pay such sum, claiming that it was only liable for such sums as plaintiff actually expended for substituted essential services as verified by receipts. Plaintiff seeks (1) a declaratory judgment on the insurance policy under N.J.S.A. 39:6A-4(d) requiring the insurance company to pay the sum of $4,380; (2) counsel fees pursuant to R. 4:42-9(a); (3) interest pursuant to N.J.S.A. 39:6A-5(c), and (4) costs of suit.
At issue is the meaning of N.J.S.A. 39:6A-4(d). Although the terms of the insurance policy may also be considered in resolution of this problem, the relevant statutory provisions control the contract of insurance. Downs v. Prudential Ins. Co. of America, 130 N.J. Super. 558, 564 (Law Div. 1974); see also, Peraglia v. Jones, 120 N.J. Super. 518 *311 (App. Div. 1972). In relevant part N.J.S.A. 39:6A-4 provides:
Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide additional coverage, as defined herein below, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident involving an automobile, to other persons sustaining bodily injury while occupying the automobile of the named insured or while using such automobile with the permission of the named insured and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile. "Additional coverage" means and includes:
* * * * * * * *
c. Essential services benefits. Payment of essential services benefits to an injured person shall be made in reimbursement of necessary and reasonable expenses incurred for such substitute essential services ordinarily performed by the injured person for himself, his family and members of the family residing in the household, subject to an amount or limit of $12.00 per day. Such benefits shall be payable during the life of the injured person and shall be subject to an amount or limit of $4,380.00, on account of injury to any one person in any one accident.
d. Survivor benefits. * * *
In the event of the death of one performing essential services as a result of injuries sustained in an accident entitling such person to benefits under section 4 c. of this act, the maximum amount of benefits which could have been paid such person, under section 4 c., shall be paid to the person incurring the expense of providing such essential services.
* * * * * * * *
The term "essential services" is defined as "those services performed not for income which are ordinarily performed by an individual for the care and maintenance of such individual's family or family household." N.J.S.A. 39:6A-2(b).
In interpreting a statute the initial tasks of the court are to discern and effectuate the intent of the Legislature. State v. Madden, 61 N.J. 377, 389 (1972); Reale v. *312 Wayne Tp., 132 N.J. Super. 100, 115 (Law Div. 1975). A statute may not be expanded beyond its clearly expressed legislative intent. N.J. Manufacturers Ins. Co. v. Keystone Ins. Co., 112 N.J. Super. 585, 589 (Ch. Div. 1971). In applying a statute the court is to ascertain the intention of the Legislature from the plain meaning of the statute and apply it to the facts as the court finds them.
A clear and unambiguous statute is not open to construction or interpretation, and to do so in a case where not required is to do violence to the doctrine of the separation of powers. Such a statute is clear in its meaning and no one need look beyond the literal dictates of the words and phrases used for the true intent and purpose in its creation. [Watt v. Mayor and Council of Borough of Franklin, 21 N.J. 274, 277 (1956)]
The statute clearly states that when the person performing essential services dies as a result of injuries sustained in an accident covered under the "No Fault Act," the maximum amount which could have been paid under § 4(c) "shall be paid to the person incurring the expense of providing such essential services." The requisites for receiving the maximum amount are (1) the death of one providing essential services; (2) entitlement of the deceased to benefits under N.J.S.A. 39:6A-4(c), and (3) proof that the present claimant is now incurring the expense of providing essential services.
Maros, prior to his death, performed the following services: partial construction of a carport, painting of the interior and exterior of the house, cutting of grass, driving spouse to the doctor, plumbing repairs, snow shovelling, car maintenance, furniture moving and window washing. Further, decedent cared for plaintiff during various illnesses. Applying the statutory scheme to the case at bar, the court finds decedent was one who provided "essential services" and would have been entitled to reimbursement for such expenses under N.J.S.A. 39:6A-4(c), had he survived. Plaintiff has submitted proof to the court that she is now the *313 person incurring the expense of providing "essential services."
The New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq., is to be liberally construed to effectuate the purpose thereof. N.J.S.A. 39:6A-16. The intent of the Legislature in affording personal injury protection coverage was to effect "reparation for all New Jersey accident victims, promptly, fairly and efficiently." Automobile Insurance Study Commission, Report to the Governor and Legislature, "Reparation Reform for New Jersey Motorists," xii (Dec. 1971). To require a survivor, such as Mrs. Maros, to submit each bill for approval for the remainder of her life is contrary to the legislative intent manifested in § 4(d) and to the goal of prompt and efficient adjustment of claims. In keeping with the spirit of the entire act the court will allow plaintiff the maximum amount permitted under § 4(c), $4,380.
The above statutory interpretation is in accordance with the policy of insurance. Section I of the New Jersey Basic Personal Injury Protection Endorsement provides under "survivor benefits" that
* * * if the eligible injured person ordinarily performed essential services for the care and maintenance of himself, his family or family household, an amount not to exceed the difference between $4,380 and all basic essential services benefits (shall be) paid with respect to his injury prior to death.
Thus, utilizing the policy language the same result is achieved. Since no basic essential benefits have been paid, the entire $4,380 is due.
Counsel fees may be awarded in the discretion of the court when an insurance policy is at issue. Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234 (App. Div. 1975); N.J. Mfrs. Ins. Co. v. Consolidated, 124 N.J. Super. 598 (Law Div. 1973). R. 4:42-9 states that "(a) [n]o fee for legal services shall be allowed in the taxed costs or otherwise, except (6) [i]n an action upon a liability or indemnity *314 policy of insurance, in favor of a successful claimant." The policy considerations behind R. 4:42-9 are to prevent groundless disclaimers by carriers and to provide more equitably for insured the benefits bargained for under the insurance contract. See N.J. Mfrs. Ins. Co. v. Consolidated, supra at 601. Such fees are permitted even if a novel issue of law is presented. Corcoran v. Hartford Fire Ins. Co., supra. In this instance, after reviewing the list of services performed by counsel, the court finds that plaintiff is entitled to an attorney's fee of $750.
Interest in this instance is governed by N.J.S.A. 39:6A-5(c), which provides that "[a]ll overdue payments shall bear simple interest at the rate of 10% per annum." Interest should be awarded from February 10, 1976, the date that plaintiff's application for essential services benefits was first submitted. Finally, costs are awarded pursuant to R. 4:42-8(c).
Therefore, pursuant to R. 4:46-2 plaintiff's motion for summary judgment is granted.