150 N.J. Super. 576 (1977)
376 A.2d 224
CATHERINE HAGAINS AND JAMES HAGAINS, HER HUSBAND, PLAINTIFFS,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 13, 1977.
*579 Mr. Barry J. Hockfield for plaintiffs (Joseph Asbell & Associates, attorneys).
Mr. Robert J. Forgash for defendant (Messrs. Orlando, Forgash & Slimm, attorneys).
CORUZZI, J.C.C., Temporarily Assigned.
There are cross-motions for summary judgment pursuant to R. 4:46-2. No material fact being challenged, this determination concerns only legal questions of construction of the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq., commonly called the "No Fault Law."
On August 2, 1975 plaintiff Catherine Hagains was involved in an automobile accident. At the time of the accident defendant Government Employees Insurance Company was the personal injury protection carrier for plaintiff Catherine Hagains. As a result of the accident plaintiffs had incurred various medical expenses, all of which have now been paid. Nevertheless, on June 21, 1976 plaintiffs filed a complaint against defendant, alleging the late payment of personal injury protection benefits in the nature of medical expenses arising from the accident of August 2, 1975. Plaintiffs seek (1) interest pursuant to N.J.S.A. 39:6A-5(c); (2) counsel fees pursuant to R. 4:42-9(a), and costs of suit.
The issues in this case appear to be ones of first impression. Plaintiffs here allege the late payment of personal injury protection benefits on the grounds that certain medical bills were not paid within 30 days of their submission to the defendant. The argument raised on behalf of plaintiffs is that once an insured presents his carrier with medical expenses following an automobile accident, the insurer has been presented with the required written notice of a covered loss for purposes of N.J.S.A. 39:6A-5(b). Consequently, unless the insurer can meet his statutory burden of proving that it is not responsible for the payment, the insurer must make payment on the bill within the 30-day period, pursuant to N.J.S.A. 39:6A-5(b).
*580 In their motion for summary judgment plaintiffs claim, as a matter of law, that they are entitled to interest, costs and counsel fees for the late payment of four separate medical bills. The first item is the bill of John F. Kennedy Memorial Hospital in the amount of $1,192.95 concerning plaintiff's six-day admission from August 2 through August 8, 1975. The second item is the bill of the John F. Kennedy Memorial Hospital in the amount of $1,040 concerning plaintiff's ten-day admission from December 3 through December 13, 1975. The third item is the bill of Dr. Ralph V. Franciosi in the amount of $205. The fourth item is the bill of Kennedy Internal Medicine Specialists in the amount of $255.
Defendant, in its cross-motion for summary judgment on the issues of interest, attorneys fees and costs, contends that the only way for an insurer to know that a loss is a covered loss for purposes of N.J.S.A. 39:6A-5(b) is for that section to be read in pari materia with N.J.S.A. 39:6A-13 (b). Defendant argues that the latter section gives the insurer the right to obtain the relevant medical records which, in turn, enable it to determine whether or not the medical bill is for treatment for injuries sustained in an automobile accident or whether the treatment is for an unrelated condition. Therefore, defendant's position is that, without reading N.J.S.A. 39:6A-5 in pari materia with N.J.S.A. 39:6A-13(b), there is no way for the insurance carrier to know that the submitted bill is for a covered loss. Consequently, the 30-day period mandated by N.J.S.A. 39:6A-5 does not begin to run until the carrier receives the necessary medical reports to establish that the bill was for a covered loss.
Clearly, when interpreting a statute the first task for any court is to discern and effectuate the intent of the Legislature. State v. Madden, 61 N.J. 377 (1972). Our courts, in construing the intent of the legislators with respect to the No Fault Law, have consistently supported the proposition that the purpose of the act is to provide for the prompt *581 payment of medical bills, lost wages and property damages without the injured party having to await the outcome of protracted litigation. Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475 (App. Div. 1976); Zyck v. Hartford Ins. Group, 143 N.J. Super. 580 (Law Div. 1976); Harris v Osorio, 125 N.J. Super. 468 (Law Div. 1973).
This court is also well aware of the legislative mandate which requires that the Act "shall be liberally construed so as to effect the purpose[s] thereof" N.J.S.A. 39:6A-16; Maros v. Transamerica Ins. Co., 143 N.J. Super. 307 (Law Div. 1976). Of course, the No Fault Law, like all remedial statutes, is entitled to a liberal construction under our common law. Service Armament Co. v. Hyland, 70 N.J. 550 (1976); Carianni v. Schwenky, 38 N.J. Super. 350 (App. Div. 1956).
Mindful of the purposes and liberal construction which must be given the No Fault Law, the court now turns to an examination of the statute in question. N.J.S.A. 39:6A-5(b) reads in pertinent part:
Personal injury protection coverage benefits shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same. If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer; provided, however, that any payment shall not be deemed overdue where the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer. For the purpose of calculating the extent to which any benefits are overdue, payment shall be treated as being made on the date of a draft or other valid instrument which is equivalent to payment was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.
The crucial question before the court is whether the "covered loss" referred to in the above statute can only *582 be determined, as argued by defendant, by reading the statute in pari materia with N.J.S.A. 39:6A-13(b). This court believes that the fundamental purpose of the No Fault Act was to insure the prompt payment of medical bills without regard to fault. A ruling by this court that the receipt of medical reports is a condition precedent to the payment of medical bills pursuant to N.J.S.A. 39:6A-5(b) would only frustrate the previously stated purposes of this act by causing unnecessary delays and perhaps even litigation in the preparation, processing and interpretation of the said reports.
An excellent example of this rationale of construing the various sections of the No Fault Law in a manner which is in keeping with the spirit of the entire act can be found in Maros v. Transamerica Ins. Co., supra. There the court held that it was unnecessary for a surviving spouse to present receipts for each sum she actually expended for substitute essential services for the rest of her life or until she reached the statutory maximum amount in order to obtain essential services benefits pursuant to N.J.S.A. 39:6A-4 (c). Instead, the court ruled that an interpretation of the statute "in keeping with the entire spirit of the act" would allow the plaintiff to receive the maximum amount as a lump sum rather than submitting bills in a piecemeal manner.
The "covered loss" provision of N.J.S.A. 39:6A-5(b) is not to be construed in pari materia with N.J.S.A. 39:6A-13(b). Such a construction would not be in keeping with the spirit of the entire act and therefore was not intended by the Legislature. Only a far less stringent interpretation of the notice requirement of N.J.S.A. 39:6A-5(b) would be in line with the purposes and spirit of the No Fault Law. This proper interpretation of the statute can be obtained through the use of a well established principle of statutory construction set down by our Supreme Court in Safeway Trails, Inc. v. Furman, 41 N.J. 467, 478 (1964): "In the absence of an explicit indication of a special meaning, the words of a statute are to be given their ordinary and well understood meaning."
*583 Applying the above-quoted principle to N.J.S.A. 39:6A-5(b) leads to the conclusion that since no special meaning was given the passage in question, the language is to be interpreted in a plain and ordinary fashion. Furthermore, a literal interpretation of the phrase "written notice of the fact of a covered loss" will require that it be applied in a liberal manner. No other interpretation is possible in light of the above principle of statutory construction and the remedial purposes of the No Fault Law. Therefore, any time an insurer receives a bill from its insured which on its face or in the accompanying paper indicates in any manner that it is for medical services rendered to the insured as a result of an automobile accident, the insured has complied with the notice requirement of the statute. At that point the insurer has the absolute obligation to pay the bill within 30 days or to establish that it is not responsible for its payment. N.J.S.A. 39:6A-5(b).
Turning to the undisputed facts of this case the court will now determine the specific dates upon which the N.J.S.A. 39:6A-5(b) notice was received by defendant for the medical bills in question. The court finds that September 12, 1975 was the date when defendant received notice of the John F. Kennedy Memorial Hospital's bill concerning plaintiff's admission on August 2, 1975. The court believes that the crucial element of notice was present on that date since the admission date for the hospital stay was the same as the date for the accident, and defendant had been previously notified by his insured of the date of the accident. Likewise, the court holds that sufficient notice has been provided when an insurer receives medical bills enclosed with a letter from its insured's attorney which indicates that these expenses were incurred by his client as a result of an automobile accident. The record in this case reveals that such a letter from plaintiffs' counsel, Mr. Hockfield, was received by defendant on June 2, 1976. Therefore, written notice of a covered loss was provided to defendant for the bills of John F. Kennedy Memorial Hospital concerning plaintiff's admission on *584 December 3, 1975, and of Dr. Ralph V. Franciosi and the Kennedy Internal Medicine Specialists, on June 2, 1976.
Both parties have stipulated as to the dates upon which defendant made payment on these four bills. The dates were: August 6, 1976 for the hospital bill concerning the August 1975 admission of plaintiff, June 28, 1976 for the second hospital bill concerning the December, 1975 admission of plaintiff, and February 7, 1977 for the bills of Dr. Franciosi and Kennedy Internal Medical Specialists. An examination of these dates indicates that only the bill for the December hospital stay by plaintiff was paid within the required 30-day period. Therefore, with respect to the other three medical bills the imposition of interest for late payment is mandatory pursuant to N.J.S.A. 39:6A-5(c). Ortiz v. Safeco Ins. Co., 144 N.J. Super. 506 (App. Div. 1976).
Defendant can only avoid the payment of this interest when it "has reasonable proof to establish that the insurer is not responsible for the payment." N.J.S.A. 39:6A-5(b). That is not the case here and so defendant will be required to pay interest to be computed at the annual rate of 10% from the date which is 30 days after written notice to it was made for each of the three late paid bills. N.J.S.A. 39:6A-5(c).
The allowance of counsel fees in this action is permissible pursuant to R. 4:42-9(a) (b) which permits such allowances to a successful claimant in an action upon a liability or indemnity policy of insurance. The court, after examining the affidavit of services rendered submitted by plaintiffs' counsel, feels that an award of $500 is appropriate under the circumstances of this case.
For all the aforementioned reasons this court will sign an order directing that summary judgment be entered for plaintiffs, along with interest, counsel fees and costs of the suit, and denying summary judgment to defendant.