(850 P.2d 262)

No. 66,870 [1]

HAZEL SCOTT, *Appellee,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant.*

Opinion filed April 10, 1992.

*Michael J. Dutton,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellant.

*Roger W. McLean,* of Barnett, Walker & O'Connor, Chartered, of Kansas City, for appellee.

Before BRAZIL, P.J., LARSON, J., and RICHARD B. WALKER, District Judge, assigned.

WALKER, J.: State Farm Automobile Insurance Company (State Farm) appeals a postjudgment award of attorney fees and interest to Hazel Scott, who had been awarded personal injury protection (PIP) benefits by a jury verdict. We affirm.

State Farm first contends that the trial court erred in awarding interest on the amount of PIP benefits which were found by the jury to be owing. The award of interest on PIP benefits is governed by K.S.A. 40-3110, which provides in part:

"(b) Personal injury protection benefits payable under this act shall be overdue if not paid within thirty (30) days after the insurer or self-insurer is furnished written notice of the fact of a covered loss and of the amount of same . . . . *Provided,* That no such payment shall be deemed overdue where the insurer or self-insurer has reasonable proof to establish that it is not responsible for the payment . . . . All overdue payments shall bear simple interest at the rate of eighteen percent (18%) per annum."

On appeal, State Farm argues that the payments were not "overdue" because it had "reasonable proof to establish that it is not responsible for the payment." In support of this contention, State Farm points out that Scott was extensively treated by Dr. Fenton Williams. During the time State Farm was considering Scott's claim, it had information that Dr. Williams was the subject of a disciplinary proceeding before the Kansas Board of Healing Arts as a result of alleged overbilling. The Board ultimately issued a final order, disciplining Dr. Williams and making the following finding:

"Inappropriate billings for medical services rendered covering a long period of time and for numerous patients support the conclusion the billings were not mere errors and mistakes, but were intentional. . . . [T]he Findings of Fact support a conclusion, by clear and convincing evidence, that Licensee intended to deceive, mislead or make misrepresentations by the submission of the inappropriate billings."

State Farm submitted the records of Dr. Williams' treatment of Scott, together with the records of other treatments she received, to a company called Intracorp for review. The district court described Intracorp in this way:

"This court's first impression of Intracorp, is that it is apparently a group of doctors, retired so far as is known, who will, for a fee, evaluate medical bills and treatment. If the opinion differs from a policyholder's bills, as to reasonableness and necessity, the company assumes it can, under KSA 40-3111(b), raise the question of whether it has 'reasonable proof' to deny the claim."

Intracorp responded to State Farm's request with a letter which stated that of the $7,832.71 in medical bills incurred by Scott, it would recommend payment of only $1,019.40. Intracorp recommended that State Farm not pay $267 in radiology charges, $2,365.06 in hospitalization charges by Bethany Medical Center, $546.25 in physical therapy by Bethany Medical Center, and $250 for a neurological exam by Dr. Iftekhar Ahmed. Intracorp made the recommendation after a review of Scott's record by Dr. William A. Slentz, who later testified at trial in this case.

Dr. Slentz testified that in his opinion the majority of the treatment was unnecessary and the charges for it were excessive. He stated that the x-rays of Scott's back and neck showed degenerative changes of Scott's spine. He stated that Scott was

suffering from arthritis, osteoporosis, and spondylolisthesis. The basic thrust of Dr. Slentz's further testimony was Scott would not have suffered injuries from the accident of a severity that would necessitate the amount of treatment she received. Dr. Slentz repeatedly testified that Scott should not have been experiencing the pain she claimed to be suffering.

State Farm argues at length that the recommendation given by Intracorp provided it with reasonable basis to believe that it was not responsible for the PIP payments. Scott points out that Dr. Slentz never conducted an examination of her and, in essence, simply reviewed her records and concluded that her complaints of excruciating pain were untrue. Scott notes that State Farm did not even know the identity of the Intracorp physician who reviewed the records until after it had denied the claim.

Prior to trial, Scott abandoned any claim for PIP benefits based on services provided by Dr. Williams. The only expenses which Scott sought to recover at trial were those for radiology, the bills from Bethany Medical Center for hospitalization and physical therapy, and the bill for a neurological exam by Dr. Iftekhar Ahmed. The parties also entered into a stipulation, the effect of which is disputed on appeal. The stipulation reads:

"The parties to this action stipulate that the charges for medical treatment rendered to plaintiff by Providence-St. Margaret Health Center, Radiology Chartered, Bethany Medical Center and Iftekhar Ahmed, M.D., were reasonable and customary for the services rendered.

"The defendant expressly denies, and reserves its right to challenge the reasonableness and necessity of any and all such treatment, and to specifically challenge whether such treatment was reasonable or necessary as a result of the subject automobile collision."

After hearing the evidence and receiving the stipulation, the trial judge made the following findings with regard to whether State Farm had a reasonable basis to conclude that it was not responsible for the PIP payments:

"Here, the defendant stipulated to reasonableness of the bills, but claimed the treatment was unnecessary, based only on Dr. [Slentz's] reading of the records, and without ever having seen or examined the plaintiff at any stage of her problems.

"It appeared that Dr. [Slentz] would have been a valuable witness for defendant if plaintiff had been attempting collection of the bills plaintiff had incurred from Dr. Fenton Williams. When plaintiff dropped that claim and

proceeded only on bills she had incurred for hospital and out-patient treatment, defendant still presented Dr. [Slentz] to testify these treatments were unnecessary.

"Plaintiff's own evidence that the treatments by nurses and therapists were successful and resulted in a recovery from her pain and discomfort was unchallenged.

"Dr. [Slentz] never examined the plaintiff. He relied only upon records. Defendant had previously stipulated the amounts charged for the services were reasonable. Dr. [Slentz's] only purpose then was to demonstrate that the treatment was unnecessary.

. . . .

". . . Although the company denied that the treatments were necessary through Dr. [Slentz], the treatment did in fact attack her problem and cure her ills. These are the same treatments many doctors prescribe for back complaints following trauma.

"In short, State Farm had reasonable grounds to deny the claim for Dr. Fenton Williams' charges, but it was unreasonable to deny their contractual obligation to pay her medical treatment charges."

On appeal, this court is called upon to determine whether the trial court erred in its finding that State Farm lacked reasonable grounds to deny payment for the medical charges at issue. The standards of review in such a case are well settled: "The standard of appellate review of findings of fact has been stated numerous times by this court. The court must determine if the findings are supported by substantial competent evidence and whether they are sufficient to support the trial court's conclusions of law." *Army Nat'l Bank v. Equity Developers, Inc.,* 245 Kan. 3, 19, 774 P.2d 919 (1989). "Upon appellate review this court accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings in the trial court, and disregards any conflicting evidence or other inferences which might be drawn therefrom." *Leeper v. Schroer, Rice, Bryan, & Lykins, P.A.,* 241 Kan. 241, Syl. ¶ 3, 736 P.2d 882 (1987).

In the present case, it is clear that State Farm had reason to be suspicious of bills submitted by Dr. Fenton Williams. The investigation by the Board of Healing Arts of which State Farm was aware show that Dr. Williams had systematically, for a number of years, overbilled for his services. Unfortunately for State Farm, bills submitted by Dr. Williams were not at issue before the trial court. Obviously aware of the difficulties with Dr. Williams' bills, Scott dropped her request for PIP payments based

on those bills and proceeded at trial with an attempt to recover only for bills submitted by other entities. As the trial judge found, this would appear to negate State Farm's contention that it had reasonable grounds to deny payment based on Dr. Williams' questionable billing practices.

State Farm replies that the treatments provided by the other entities were done at the request of Dr. Williams, and, therefore, they are suspect, too. The problem for State Farm is that the trial court simply chose not to draw this inference. Indeed, the findings and orders by the Board of Healing Arts do not mandate the conclusion that Dr. Williams habitually ordered unnecessary treatments, thereby allowing other medical service providers to overbill. The trial judge found that Dr. Williams' questionable billing practices did not provide State Farm with a reasonable basis to believe that it was not responsible for the PIP payments. Under the standard of review employed by this court, the trial judge's ruling must stand.

Another source from which State Farm might have obtained a reasonable basis for denial for PIP payments was Dr. Slentz. However, the trial judge listened to Dr. Slentz's testimony, had a chance to evaluate it firsthand, and found that it did not provide the reasonable proof for State Farm to keep the PIP payments from becoming overdue. This finding is supported by the fact that Dr. Slentz never examined Scott before concluding that her complaints of pain were untrue or, apparently in the alternative, that if her complaints were true the pain did not result from the accident. The trial judge mentioned in his memorandum decision that he found Dr. Slentz's testimony somewhat unbelievable, after Slentz testified that a traumatic blow to a patient suffering from degenerative spinal conditions could not aggravate the condition of her spine.

Because this court does not reweigh evidence on appeal nor pass on the credibility of witnesses, it must uphold the finding that Dr. Slentz's opinion did not provide reasonable proof that State Farm was not responsible for the payment of PIP benefits to Scott. This court cannot undo the trial judge's disbelief of Dr. Slentz. The judgment with regard to interest due on overdue PIP payments is affirmed.

State Farm also contends the trial court, erred in awarding attorney fees. The award of attorney fees in a personal injury protection benefit case is governed by K.S.A. 40-3111(b), which provides:

"An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal injury protection benefits which are overdue. The attorney's fee shall be a charge against the insurer or self-insurer in addition to the benefits recovered, if the court finds that the insurer or self-insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

In *DiBassie v. American Standard Ins. Co. of Wisconsin*, 8 Kan. App. 2d 515, 661 P.2d 812 (1983), this court was called upon to review an award of attorney fees under K.S.A. 40-3111(b). After citing that statute and conducting an extensive review of prior cases, the *DiBassie* court stated:

" 'Whether the refusal of an insurance company to pay is without just cause or excuse under this statute is to be determined on the facts and circumstances of each case. The circumstances confronting the insurer when payment of loss is denied determines the question, and the circumstances are to be judged as they would appear to a reasonably prudent man having a duty to investigate in good faith and to determine the true facts of the controversy. *Brown v. Continental Casualty Co.*, 209 Kan. 632, 498 P.2d 26 (1972). Whether there was just cause to refuse payment and therefore justification for denial of attorney's fees is in the trial court's sound discretion. *Farm Bureau Mutual Ins. Co. v. Carr*, 215 Kan. 591, 598, 528 P.2d 134 (1974).'

. . . .

"It is clear that whether there has been a delay in payment 'without just cause or excuse,' supporting an award of attorney fees, is a matter committed to the trial court's discretion; the issue is primarily one of fact, to be determined by the trial court on the basis of the facts and circumstances of each case." 8 Kan. App. 2d at 523.

As *DiBassie* makes clear, the award of attorney fees in insurance cases such as this one is committed to the sound discretion of the trial court. The question of whether fees are properly awarded under K.S.A. 40-3111(b) and/or K.S.A. 40-256 is obviously closely akin to the question of whether the insurance company has "reasonable proof," as required by K.S.A. 40-3110, to deny PIP benefits. Research discloses no Kansas case which discusses the nuances and shades of meaning which separate the "reasonable proof" standard of K.S.A. 40-3110 from the "unreasonably refused

to pay" standard of K.S.A. 40-3111(b) and the "without just cause or excuse" standard from K.S.A. 40-256. However, it would seem odd that an insurance company could lack "reasonable proof" that it was not required to pay a PIP claim but still have a "just cause or excuse" for denying that claim.

In the present case, the trial court in its discretion found that State Farm's refusal to pay for medical bills other than those submitted by Dr. Fenton Williams was unreasonable. State Farm's arguments with regard to the award of attorney fees are essentially the same as its arguments with regard to the award of interest on overdue PIP payments. Since this court accepts the trial court's ruling that the PIP payments were overdue, that is that State Farm lacked reasonable proof that it was not responsible for those payments, we must therefore conclude that the denial of the claim was unreasonable and without just cause or excuse. This is particularly so because the award of attorney fees is a matter committed to the discretion of the trial court. Judicial discretion is abused only when the action taken is arbitrary, fanciful, or unreasonable. *State v. Wagner*, 248 Kan. 240, 242, 807 P.2d 139 (1991). No abuse of discretion has been shown.

The judgment of the trial court is affirmed.

LARSON, J., concurring and dissenting:

I concur with the result reached in this case, but I dissent from the wording and import of Syllabus ¶ 4.

The literal reading of Syllabus ¶ 4 is that in every case, once the trial court finds that personal injury protection (PIP) payments were overdue because the insurer had no reasonable grounds to refuse or delay payment, it has also found that the delay or refusal requires the allowance of attorney fees to the claimant.

My reading of K.S.A. 40-3110(b) and K.S.A. 40-3111(b) is materially different. I would hold that before attorney fees would be allowed, a two-step approach is required. The trial court must first make a determination whether payments for benefits are overdue, with the insurer being entitled to the provision "[t]hat no such payment shall be deemed overdue where the insurer or self-insurer has reasonable proof to establish it is not responsible for the payment." K.S.A. 40-3110(b). This section goes on to

require the payment of 18% simple interest on all overdue payments.

The statutory provision for the allowance of attorney fees is found in K.S.A. 40-3111(b), which in applicable part reads as follows:

"An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal injury protection benefits which are overdue. The attorney's fee shall be a charge against the insurer or self-insurer in addition to the benefits recovered, if the court finds that the insurer or self-insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

This separate provision requires the application of the second step to the mandated statutory approach, which is for the trial court to determine, before attorney fees are allowed, if the insurer or self-insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

The trial court here was unimpressed with Intracorp's evaluation and the lack of an examination of Scott by Dr. William Slentz; it was impressed by the fact that the treatments by the nurses and therapists were successful and resulted in Scott's recovery from her pain and discomfort. These facts justify the trial court's finding that the PIP payments were overdue and State Farm was unreasonable in refusing to pay the claim.

The trial court made a sufficient finding to justify both the imposition of interest under K.S.A. 40-3110(b) and attorney fees under K.S.A. 40-3111(b) albeit not with the precision and clarity required by the separate statutory provisions.

The literal reading and application of Syllabus ¶ 4 of this case is inconsistent with our previous decision of *Hand v. State Farm Mut. Auto. Ins. Co.*, 2 Kan. App. 2d 253, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978). Although the issue in *Hand* was the extent of the survivor's benefits to be allowed under K.S.A. 1977 Supp. 40-3101 *et seq.*, *Hand* was the first case construing K.S.A. 40-3111(b). The law relative to the recovery of attorney fees under K.S.A. 40-256 was held to be relevant authority. Judge Rees of our court opined:

"Construing K.S.A. 40-256, the Kansas Supreme Court has said that attorney fees will be awarded in cases of 'frivolous and unfounded denial of liability.' *Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, 565,

470 P.2d 756 (1970). The issue of whether an insurer refused to pay without just cause or excuse is primarily one of fact to be determined in the first instance by the trial court. *Farm Bureau Mutual Ins. Co. v. Carr,* 215 Kan. 591, 598, 528 P.2d 134 (1974); *Sloan v. Employers Casualty Ins. Co.,* 214 Kan. 443, 521 P.2d 249 (1974). The presence of a good faith legal controversy, particularly if it involves a matter of first impression in this jurisdiction, may constitute just cause or excuse for an insurer's refusal to pay. *Farm Bureau Mutual Ins. Co. v. Carr,* [15 Kan. at 599]; *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 517 P.2d 173 (1973).

"In this case, defendant was not guilty of a frivolous and unfounded denial of liability; the legal issue involved is one of first impression and defendant's position was not without merit. We do not find the trial court erred.

"The denial of recovery of attorney fees is affirmed." 2 Kan. App. 2d at 261.

I do not question that the justification for the allowance or denial of attorney fees is in the trial court's discretion, which was held in *DiBassie v. American Standard ·Ins. Co. of Wisconsin,* 8 Kan. App. 2d 515, 661 P.2d 812 (1983), to be based on whether there was just cause to refuse payment.

I would hold the two-step approach should be consistently applied throughout the Kansas Automobile Injury Reparations Act. First, "Was the PIP payment overdue?" Then, "Did the insurer unreasonably refuse to pay the claim?" I disagree with and dissent from Syllabus ¶ 4, which would make the determination a one-step process.